May it please the Court, good morning. My name is Quentin Rhodes. I'm appearing today on behalf of the petitioners Blaskovic. There's three issues I'd like to address to the Court. The first being the issue of exhaustion of remedies and whether the Court has jurisdiction to hear argument on the issue of whether the Blaskovics were continuously present in the United States for a sufficient period to be eligible for relief from removal under the INA. My understanding is that there's no place in their brief to the BIA where they said we should have gotten suspension or removal. There was a mistake in the ruling about continuous physical presence. Am I right in that they never said that in their brief? Your Honor, they They had some other arguments, but isn't it correct they didn't say that in their brief? Your Honor, they never specifically said in their brief that because we were on parole in Canada, we ought to be considered continuously present. They never said in their brief there's an error on the continuous physical presence, did they? Putting aside the theory of parole, my understanding is they just said the IJ error, but they didn't specifically say there's a mistake on the physical presence element. Well, no, Your Honor, I think that's correct. I'm correct in that. With respect to asking specifically whether the physical presence question needs to be reviewed by the BIA, it was raised by the immigration judge, I believe at page 136 or 137 of the record, or 137, 138, and he talks about that and makes a finding. I realize he talked about it. Yes, sir. And they told the BIA the IJ error, you know, in so many words. But what all, and I don't know the answer on exhaustion right now. I haven't made my mind up, but I just want to make sure I understand the facts in the record. And the factual part of the record on exhaustion is that the counsel didn't argue in the BIA brief that there was an error on the physical presence determination. That's right, Your Honor, and they were pro se, and I think the rule is. I think you're conceding that too quickly, because he talks about in his brief to the BIA that he wasn't able to clarify the circumstances of the case. His wife wasn't allowed to explain their situation to the judge because she was cut off. And they start talking about the Canadian case, and I realize that these people are pro se, and I know they're pro se, liberally construed. But the fact is they start talking, they don't use the magic words, suspension of deportation, but they talk about the issue of their being in Canada and what happened. Yes, Your Honor. I agree. I don't know why you would concede that so quickly. Well, what I have to concede, Your Honor, is the fact they didn't talk about parole and they didn't talk about the continuous presence. But they did both in their notice of appeal, which under the Lotta case in our brief says that if you don't discuss it in the brief, if you put it in the notice of appeal, then you've raised it. And in their notice of appeal, which is 58 and 59 of the transcript, they do talk about the fact that they wanted to put on evidence as to why they were in Canada and the fact that the immigration judge made errors regarding their absence in Canada. And then they also talk about that again in their brief on page 18 of the record. In the notice, did they say anything about physical presence? No, and that's why I must concede that, Your Honor. Okay, well, maybe I can be persuaded that in a pro se case there's jurisdiction. I'm not sure. It's just kind of a question of what we require for exhaustion. If we don't require a party to present an issue to the BIA and flag it to them and say, well, here's what I'm contending, then we end up having to review a lot of things that maybe the BIA would have ruled differently on if they had been focused on it. It was an obvious issue, as you can tell, wasn't it? Because the immigration judge themselves raised it. I think that's something we're going to have to hash out among ourselves. You have about half your time left. Let's get to the substance of the parole argument. Yes, Your Honor. Thank you. Now, with regard to the ---- I have a single question. Yes, sir. You're making the assertion that the Petitioner satisfied the requirement of presence in the U.S. for either 7 or 10 years, whichever criteria you apply, because of their status as having been paroled into Canada. Yes, sir. Now, we know that under U.S. law, if a person is paroled into the U.S., he's never admitted. So, in effect, he is not here, right? Correct. I believe that's the law, Your Honor. Now, we make that assumption that the same is true with respect to Canada. Now, Canada did the paroling, right? Yes, sir. How do we know that their law is the same as ours? Or do we take our law and say, well, just because some foreign nation paroled somebody in, that means they were never there? Do you follow me? Yes, sir, I do. We do not have anything in front of us that tells us what the Canadian law is on that.  Well, I don't think that's exactly how the issue ought to be framed, Your Honor, because I think that what we're talking about is how the United States views these folks with respect to whether they're eligible for relief from removal or deportation. And how Canada views that is well and good, but the United States looking at its own law, interpreting its own law, and applying its own law, I was going to say, are these people in the United States for the 10 years or are they outside of the United States? And looking to U.S. law, I think it's pretty clear they were in the United States. And furthermore, what the Immigration Service does is instead of treating them as coming into the United States without eligibility and putting them into exclusion, they treat them as if they had been in the United States for the entire period and put them into deportation. And I think that's important with respect to how they're here asking American courts and American agencies for relief, and that's important as far as how those agencies are going to treat these people, notwithstanding whatever Canadian law might be. Is that because excludable aliens are not put into deportation proceedings? That's right. It's a different set of proceedings, Your Honor. They're treated differently. They have different procedural rights. And the INS treated them as if they were in the United States since their first arrival, instead of as if they had left and then were trying to get back in. So are you making an estoppel argument? Are you saying that we take the legal fiction that we apply to the concept of entry in parole and somehow say that that results in meets the physical presence requirement for it? I think it's difficult to apply estoppel, although I think many of the elements are there. I can't show that our clients relied on that parole, but I think that it's more of a question of, I suppose, just the, as I say, estoppel would imply that they're relying on the U.S. telling them they're being paroled, and I don't think subjectively they actually did. I think they went to Canada, paroled into Canada, seeking asylum there, and when they learned that they weren't eligible for errors that they claimed their lawyer made, they came back without really being subjectively aware, once again,  but I think it's very important to just the consistency of how they're treated under U.S. law. In other words, if they had come here unlawfully at the outset, they would have been paroled in the U.S., and then they wouldn't have been given the procedural and substantive remedies that a person in the U.S. who hasn't been paroled gets. In other words, they stop you at the border, say you're paroled, you can come in, but you don't get the same rights as if you come in legally. Now, in this case, it's the same argument I'm making. They left the United States under parole. The INS treated them as if they were still in the United States when they put them into proceedings, and it seems to me that the U.S. needs to be fair in how it treats them. If it wants to say you're not here, then it gives you a certain set of remedies. If it says you are here and treats you as if you are here, as in this case, then they get additional remedies, which it seems more along the lines of a judicial admission by the INS when they put them. That they're here. That they admitted that they're here because of the procedural, or I should say the way they charged them with. I assume that the IJ raised that question of suspension because they were in the deportation proceedings. That was right at the outset of the hearing. The IJ raised that issue first. Are you eligible for discretionary relief? And the first criteria is whether you've been here continuously present, and he said no, you haven't, even though he recognized that they had been paroled into Canada, and the INS specifically told him that. How do you answer the argument that in interpreting what continuous physical presence means, we should be looking at what Congress intended? It's a statutory term, and we should be looking at the intent of Congress and the plain meaning of the language Congress used, which seemed to cut against the idea of looking at this parole fiction of, you know, when someone is paroled into the U.S., we view their status as if they're outside. But here, they were in Canada. So even if their legal status was that they were not really in Canada legally, still Congress may have had in mind giving a break to someone who's here physically, who makes connections here continuously, and if they're not really here in that sense, do they really satisfy the congressional language and intent? Well, I think, Your Honor, that it may be a question of just what's fair to them in reciprocity. In other words, you probably — Totally statutory interpretation is not a question of what's fair. It's a question of what did Congress intend. Well, I'm not sure that the statute nor even the history would indicate that Congress was thinking about parole when it said continuously physically present. But speculating what they would have wanted to do if they had, I think they would have wanted to be fair. And by paroling someone either into the United States or allowing someone to be paroled into another country, there's a lot of administrative convenience for the United States in that. And it seems to me that if the United States is going to take advantage of the convenience of having the parole fiction, then it ought to then extend the benefit of that doubt the other way to the Petitioners as well. Now, when we make the pretense the person on parole into the United States is not here, right? Yes, Your Honor, if they're coming. If we assume that everybody has to be someplace, we pretend like he's in his native country, right? I think we stop him at the border. We don't necessarily say he's there, but he's not here. He's not here. And we don't care where he is. I think that's — He's not here. I think that's fair, yes, Your Honor. Now, when Canada paroled somebody into Canada, the U.S. has nothing to do with that. Canada decides to parole him in, right? That's true. Where do they pretend that he is? We don't know. Do we have to pretend that he's here? Or can we pick any nation in the world and pretend that he's there? Or what do we do? Now, I think it's an important — I think it's an important step in this case. And I know of no case that tells us anything about it. Do you? I know of no case, Your Honor, but my reasoning would be that we allowed them into the United States. I know. I understand your reasoning. But this is all based upon these legal fictions. And it's now which fiction is the next step. Because he isn't in Canada, or because they're not in Canada, based upon a legal fiction. Well — He's here, or is he in Croatia, or is he in someplace else? If he had been paroled into the United States, then he would never have been here, and that parole wouldn't apply. And so he was never in Canada. But he came here legally. Yes. And then overstayed his permission. Yes. But he was here. Yes. And so at that point, the INS could have said, well, we're not going to allow you to be paroled into Canada. We're going to deport you. Now put you in proceedings, keep you in custody, and deport you. But instead, they said, well, look, we're going to allow you to leave the country. Canada paroled him into — Where is that in the record that the U.S. said we allow you to leave the country? I don't — The reciprocal agreement. There is the reference to — Is that in the record, or is it — I believe it's actually on page 136 or 137 of the record. It's also referenced — It's specific to these Petitioners. Well, Your Honor, the INS represented to the IJ, I think, at 136, that — Tell me, there was no specific agreement between the U.S. and Canada that related to these Petitioners. Am I wrong? You're talking about a reciprocal agreement in the abstract that anybody can qualify for, presumably, hopefully. Well, Your Honor, I think what's implied is that the INS was aware of their departure and the return. My specific question, is there any agreement between the U.S. and Canada relating to these Petitioners specifically? Not to these specifically, no, Your Honor. All right. Thank you, counsel. You're over your time. Thank you. You preserve all your remaining arguments just because you didn't argue them here. May it please the Court. I am Blair O'Connor, and I represent the Attorney General in this matter. Your Honors, Petitioners present two issues for this Court's consideration. First, whether the immigration judge's decision that they failed to establish the requisite continuous physical presence necessary for suspension of deportation was proper. And second, whether his decision that they failed to establish their eligibility for asylum was based on substantial evidence. Because they failed to exhaust their administrative remedies with respect to the first issue, and because the evidence of record fails to compel a conclusion contrary to that reached by the immigration judge as to both issues, the petition for review should be dismissed. Counsel, let's – I realize there's issues related to the exhaustion point. But leaping ahead to the parole point, the way that the United States was treating the Blasophics was they had them in deportation proceedings. Yes, Your Honor. Is that correct? And then they administratively closed those proceedings. What does that mean, administratively closed? Your Honors, because they had left Canada after they submitted their asylum application – I mean, because they left the United States and went to Canada after they submitted their asylum application, they failed to show up for their interview. So the case was referred to immigration court. The orders to show cause were issued. And again, because they weren't in the country, they failed to show up for their deportation hearing. So the immigration judge said, I'm going to administratively close proceedings subject to them being recalendared if they come back into the United States. The other alternative, I would suppose, that the IJ could have done at that point is to deport them in absentia. Yes, Your Honor. And unfortunately, it's not clear from the record, you know, whether or not the INS and the immigration court was aware of where they were at. And that's why it's hard to determine why the decision was made to administratively close proceedings as opposed to the in absentia order. But when you administratively close and you haven't concluded the proceedings, that means they're ongoing, right? Yes, these were viewed as deportation proceedings. Speaking only for fictional purposes and without reference to the statutory interpretation that we have to do, for fictional purposes then, the United States was treating them as though they were here in the United States. They just couldn't locate them. For fictional purposes, though. To the extent that once they were deported from Canada back to the U.S., the original proceedings were not terminated and removal proceedings initiated with a different charge, yes. I mean, the INS did not view them as being inadmissible at that point. You know, we would point out that if there had been an exclusion proceedings from the get-go, the whole issue would be moot because you're not eligible. Or if the I.J. had chosen to just deport them, which I.J.'s are doing all the time now. So, I mean, it's an oddity of this case. I'm wondering, for me it's a case of first impression. Is it a case of first impression in the country? I did research and I didn't find any published cases that has this exact scenario, Your Honor. Is there any circumstance unique to the Blasevics? Yes, Your Honor. Again, I'm not going to say that there might be other cases out there where people have left and then been deported back in. But again, you know, we would point out, as Judge Levy pointed out, that, you know, their reliance on U.S. case law in this circuit and the Supreme Court regarding the entry fiction is an opposite because that entry fiction solely relates as to U.S. immigration policy. They point to no authority that says that this doctrine should be applied to Canadian immigration policy. Right. Now, do you know where Canadian lies on this? I'm unaware of, Your Honor. And again, it wasn't in the record to know, you know, whether or not, you know, Canada viewed its parole theory as being an entry fiction as well. But, I mean, the bottom line as far as the government's concerned is that in terms of physical presence, they left the United States, were in Canada from April of 95 until October of 99. And, therefore, when they made the outlaw, when the immigration judge was considering the application for suspension of deportation in 1999, they did not have seven years' continuous physical presence immediately preceding their application. It seems that if we're looking at Congress's words, there might be significance to the fact that Congress said physical presence. It didn't say legal status in the U.S. You know, well, let me just clarify something. In your opening, just to make sure I understand this, you said we should dismiss on all claims. But don't you more precisely mean you want us to dismiss in part as to the issue that wasn't exhausted and deny as to the asylum? Thank you for that clarification, Judge Gold. I mean exactly that. Dismiss on the suspension claim for lack of jurisdiction and deny on the asylum claim. And on the exhaustion issue, it's a pro se applicant. The issue of suspension, that element, the physical presence element of suspension was dealt with explicitly by the IJ. In that sense, it was before the BIA, and BIA heard these petitioners saying the IJ screwed up. But is there anything in our law about exhaustion that says whether a party has to present a legal issue to the BIA to exhaust it, you know, to frame it as an issue in the case, as opposed to just saying the IJ made a mistake? Your Honor, in cases where this — It was before the IJ. Yes, Your Honor. In cases where this Court has dealt with exhaustion, like Rashida Beattie, you know, this Court has held that the issues themselves must at least be raised in order to satisfy that requirement. And even construing the brief recognizing the pro se, construing the brief and notice of appeal to the Board liberally, both the notice of appeal and brief solely focused on their asylum claims. And the only references they made to Canada was their argument that the immigration judge erred by not allowing Mrs. Blazkowicz to explain the circumstances under which their application for asylum in Canada was denied. And they also said that what Canada did shouldn't affect their asylum claims. Exactly, Your Honor. Let me ask a final question on asylum. Could you just address that at least briefly? Why isn't someone who's put on a hit list — I'll call it a hit list. I don't know if that's slang. But according to his testimony, which wasn't said to be incredible, that the Air Force said he would be assassinated if war broke out, you know, because his father had been a — I guess because his father had been a deserter, they didn't like him. His father defected and taken a plane away. Why wouldn't just that alone be enough to show a fear of persecution? It's a threat of death. Yes, Your Honor. It's not sufficient because, as the immigration judge pointed out during the hearing, it just wasn't plausible. I mean, his father defected in 1957. Mr. Blazkowicz remained in Croatia for nearly 30 years before he finally left. And it just would stand to reason that if, you know, if he was that — if they were that interested in him because of the fact that he was the son of a defector, the government would have done something during this intervening 30 years to him. You know, we would also point out that, you know, if the government was really that interested in him because of the fact that he was the son of a defector, it doesn't stand to reason that they would allow him to be discharged from their military. Rather, they would have court-martialed him, probably confined him, and kept him under their control if they really were trying to set him up for summary execution during a time of war. This wasn't plausible, Your Honor. Thank you. I don't have further questions. Now, on exhaustion, the I.J. directed comments to the petitioners saying, if you had been present here for the required time, you might be eligible for the other relief, right? Yes, Your Honor. That was mentioned. Now, it would be one thing had the I.J. remained silent about that and never told him, in effect, your case is hopeless, right? Yes, Your Honor. I mean, being pro se. Now he has told him your case is hopeless, and as a matter of fact, he's saying,  after he asks the representative of the INS about their stay in Canada, you don't have a claim here for relief. Now, that same pro se is, according to your version of the law, after having been told that by the I.J., somehow penalized for failure to exhaust, by, in effect, not knowing more law than the I.J., if the I.J. is wrong. Now, we have all these legal issues that none of us are very sure of, but assuming that there is a real issue there and the I.J. is wrong, are we going to say we expect pro se after being told that by a representative of the government in a quasi-judicial role that they're to be faulted for not knowing more and raising it on appeal? Yes, Your Honor. Again, because this line, the line of case law in this circuit on exhaustion says that the issues must at least be raised. You know, again, ignorance of the law is no excuse with respect to having to exhaust. I realize that. And — What about ignorance of the law generated by the I.J.? If that's the case, if that's the case. Again, Your Honor, the government would say that they had a — if they had a quarrel with his finding that they weren't eligible, then they should have specifically raised that to the board, given the board the opportunity to specifically address the issue. It's of no moment that he said what he did. Excuse me, Your Honor? That it's of no importance in this case that the I.J. said what he said or she said, whatever the case was. When telling the Petitioner, you know, you — since you were in Canada, you weren't here and you're not eligible. We think the I.J. was correct in that, because — Suppose he's not. Assuming that he was incorrect on that? Suppose he's not. Again, hypothetically speaking, they still needed to raise that to the board and say that he was wrong on denying us that form of relief. The cases you're relying on cover this type of situation where, as Judge Levy's noting, the issue was raised specifically by the I.J. So it's in the record that the BIA gets, but the party doesn't raise the issue to the BIA. Do those cases cover that type of situation? I apologize, Your Honor. I don't want to speak if I'm not absolutely certain, and it's been a while since I've read the facts of those cases to know what the particular circumstances were. May I briefly sum up? May I briefly conclude? Yes, of course. Okay. Again, Your Honors, because the government is of the position that they failed to exhaust the issue with respect to conceding his physical presence, even assuming they had the I.J. correctly determined that they were not physically present in the United States for the seven years preceding their application, and because the evidence of record fails to compel the conclusion that Mr. Blasevic either was persecuted instead of prosecuted for his own insubordination in Croatia or that he had a well-founded fear should he be returned, we ask that this petition for you be dismissed in part and denied in part. Thank you. All right. Thank you very much. Blasevic v. Ashcroft is submitted. Thank you, Counsel. We have a habit in this Court of allocating only 10 minutes per side for every immigration case, no matter how complicated the issues are. So I appreciate your succinct arguments, and that's why we let you go over a bit, too. Thank you. U.S. v. Castillo has previously been submitted, and we will take up NRA Northern Merchandise, Frontier Bank v. SLAM.
judges: Leavy, Wardlaw, Gould